## DYE v WAYNE COUNTY

Docket No. 76441. Submitted December 11, 1985, at Detroit. Decided June 25, 1986.

Timothy Dye, an inmate of the Wayne County jail, was found dead in his cell, hanging from the cell door bars by a towel around his neck. Juanita Dye, personal representative of the estate of Timothy Dye, deceased, and Keyisha Latise Dye, by her guardian, Juanita Dye, filed suit against Wayne County and others in Wayne Circuit Court alleging (1) negligence in the supervising of jail inmates and in providing defective premises; (2) a respondeat superior claim against the county defendants; (3) wrongful death; and (4) intentional infliction of emotional distress. The court, Roland L. Olzark, J., granted partial summary judgment in favor of defendants, dismissing many of the claims against the various defendants. Plaintiffs ultimately proceeded to trial only on the theory that various deputies intentionally killed Timothy Dye. At the close of plaintiffs' proofs, the trial court granted defendants a directed verdict. Plaintiffs appealed.

The Court of Appeals *held:*

1. There was ample evidence that Timothy Dye's death was by suicide. The evidence was not sufficient for a reasonable person to conclude that Timothy Dye was murdered. The trial court did not err in granting a directed verdict for defendants.

2. The trial court did not abuse its discretion in excluding testimony of a social worker as to the cause of Timothy Dye's death. She was permitted to testify to those matters within her expertise.

3. The trial court did not abuse its discretion in excluding evidence that Jeffrey Dye, Timothy's brother, had escaped from

References

Am Jur 2d, Evidence §§ 249 *et seq.*

Am Jur 2d, Penal and Correctional Institutions §§ 17 *et seq.*

Am Jur 2d, Trial §§ 463 *et seq.*

Civil liability of prison or jail authorities for self-inflicted injury or death of prisoner. 79 ALR3d 1210.

See also the annotations in the Index to Annotations under Prisons and Prisoners.

the jail and that eight deputies were disciplined as a result of the incident.

4. The trial court did not err in granting summary judgment as to plaintiff's claim that defendants had the duty to maintain a proper, safe and nondefective premises so that injury to the decedent could not occur and so that he could easily be kept under observation. Plaintiff's assertion on appeal that the jail cell was defective is untimely.

Affirmed.

1. MOTIONS AND ORDERS — DIRECTED VERDICT — APPEAL.

The Court of Appeals, in reviewing a grant of a directed verdict, reviews the evidence in a light most favorable to the plaintiff and determines whether a prima facie case was established; if there were material issues of fact upon which reasonable minds might differ, they must be submitted to a jury.

2. EVIDENCE — RELEVANCY OF EVIDENCE.

The determination of the relevancy of evidence is within the trial court's discretion.

3. GOVERNMENTAL IMMUNITY — PUBLIC BUILDINGS — PLEADING — APPEAL — PRESERVING QUESTION.

The failure to specifically plead in one's complaint the public building exception to the general statutory grant of governmental immunity or to otherwise specifically raise and argue in the trial court the question of the applicability of that exception precludes raising on appeal the question of the applicability of that exception (MCL 691.1406; MSA 3.996[106]).

*Bell & Hudson, P.C.* (by *Glen R. Warn*), for plaintiffs.

*John D. O'Hair*, Corporation Counsel, and *Glen H. Downs* and *Dean Koulouras*, Assistant Corporation Counsel, for defendants.

Before: DANHOF, C.J., and J. H. GILLIS and M. WARSHAWSKY,* JJ.

PER CURIAM. Plaintiffs' decedent, Timothy Dye, was found dead in his Wayne County jail cell on June 4, 1980, hanging from the cell door bars by a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

towel around his neck. Plaintiffs filed a four-count complaint alleging (I) negligence in supervising inmates and providing defective premises, (II) a respondeat superior claim against the county defendants, (III) wrongful death, and (IV) intentional infliction of emotional distress. The trial court granted partial summary judgment:

It is hereby ordered and adjudged as follows:

1. That pursuant to the provisions of Article VII, Section 6 of Michigan Constitution, the Defendant County of Wayne, Wayne County Board of Commissioners is not responsible for the acts of the Sheriff.

2. That pursuant to the Doctrine of Governmental Immunity, the Defendant County of Wayne, Wayne County Board of Commissioners is hereby dismissed from those allegations contained in Count I, Paragraph 9, Subsection (1) through (23).

3. That with respect to the allegations contained in Count II, the County of Wayne, Wayne County Board of Commissioners is hereby dismissed from all allegations of negligence as asserted in Count II.

4. That the Defendant William Lucas, pursuant to the provisions contained in MCLA 51.70; MSA 5.863 is not responsible for the acts of his deputies under any agency or respondeat superior theories as alleged in Count I and Count II of the Plaintiffs' Complaint.

5. That the Defendant William Lucas, is hereby dismissed from all allegations contained in Count I, Paragraph 9, Subsections (1) through (26) except for those allegations contained in Subsections (1), (2), (8) and (13).

An near as we can determine, plaintiffs ultimately proceed to trial only on the theory that various deputies intentionally killed Timothy Dye. At the close of plaintiffs' proofs, the trial court granted defendants a directed verdict.

On appeal, plaintiffs raise four issues. We affirm.

I

In reviewing a grant of a directed verdict, this Court reviews the evidence in a light most favorable to plaintiffs and determines whether a prima facie case was established. If there were material issues of fact upon which reasonable minds might differ, they must be submitted to a jury. *Hall v Citizens Ins Co of America,* 141 Mich App 676, 682; 368 NW2d 250 (1985).

Plaintiffs argue that the trial court erred in granting a directed verdict for defendants on the issue of whether Timothy Dye's death was caused by the intentional tortious conduct of Wayne County Deputies acting within the scope of their duties. Plaintiffs' exact theory with regard to what acts were done to bring about Timothy Dye's death is unclear from the arguments below and plaintiffs' brief on appeal. Plaintiffs apparently changed their theory from the initial claim of negligence, predicated on decedent's suicide, to a claim of intentional homicide perpetrated by the deputies. This is the claim reviewed by the trial court in deciding defendants' motion for directed verdict.

Other inmates testified that Timothy Dye and his brother Jeffrey were harassed by the deputies while incarcerated, including references made about Jeffrey Dye's escape. The same inmates also testified that, two days before Timothy Dye was found dead in his cell, four or five deputies may have beaten him in his cell after he said something to one of them, although the altercation may only have involved yelling and an attempt to transfer Timothy Dye to another cell. After Timothy Dye was found dead, one of the deputies allegedly said "Jeffrey Dye's life of crime is over

now." One deputy later said, "We got the wrong one." There was also testimony by a social worker that Timothy Dye did not seem suicidal, and defendants stipulated that Dye's death was unusual. No nearby inmates heard anything unusual that night, though the doors to the cells were apparently quite noisy. The inmate who found Dye apparently thought at first that Dye did not look as though he was hanging.

Viewed in light most favorable to plaintiffs, there was ample evidence that Timothy Dye's death was by suicide. The above evidence was not sufficient for a reasonable person to conclude that Timothy Dye was murdered. We find that the trial court did not err in granting a directed verdict for defendants.[1]

## II

Plaintiffs called Marian Patricia Kobe, M.S.W., who had interviewed Timothy Dye shortly before his death, as an expert witness. Kobe interviewed Dye as part of her graduate work. Plaintiffs contend on appeal that the trial court improperly excluded her testimony to the effect that she did not believe Dye was suicidal, that the manner of his death was unusual, that she did not believe

---

[1] The trial court, after saying that it did not believe a murder was involved, stated, "I would say—and I have to admit it's kind of stretching the imagination for you, but for a direct [sic] verdict you might say that question has to go to the jury." However, the trial court then concluded that a directed verdict was required because governmental immunity would bar plaintiffs' claims for intentional torts under a respondeat superior theory, and that the county defendants could not be liable for ultra vires acts of their employees. Our conclusion that there was insufficient evidence of an intentional killing to survive the motion for directed verdict makes it unnecessary to decide this question. Nonetheless, our reading of *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 621-625; 363 NW2d 641 (1984), convinces us that defendants would not be vicariously liable for such an intentional tort. See also *Lowery v Dep't of Corrections*, 146 Mich App 342, 357; 380 NW2d 99 (1985).

Dye's death was a suicide, and her testimony concerning methods of suicide.

Kobe testified that Dye told her he was not thinking of suicide, but had previously feigned being suicidal in an attempt to "get up on the medical floor." She testified that she did not believe Dye was suicidal at the time. After defendants objected to Kobe's testifying about suicide methods, defendants stipulated that hanging one's self with a towel is an unusual method of taking one's own life, though it is not clear if the stipulation covered the situation of an inmate with few other means of doing so. Given this testimony, we question the relevance of evidence about other methods of suicide. We also concluded above in part I that Kobe's testimony, viewed with the other evidence in a light most favorable to plaintiffs, was insufficient to survive the motion for directed verdict.

While Kobe had considerable experience in counseling and suicide prevention, and considerable contact with suicidal persons, nothing in the record suggests that she was an expert in forensic pathology or other forensic sciences such that she could determine when a death was a suicide. She was permitted to testify that she did not believe Dye was suicidal and that she was surprised by his death. We believe that was the extent of her expertise, based on the record before us. Therefore, the trial court did not abuse its discretion in excluding Kobe's testimony as to the cause of Timothy Dye's death. *Wolak v Walczak,* 125 Mich App 271, 276; 335 NW2d 908 (1983).

III

Plaintiffs argue that the trial court erred in excluding evidence that Jeffrey had escaped and

that eight deputies were disciplined as a result of the incident. Plaintiffs argue that this evidence was relevant to the motives for Timothy Dye's alleged murder. It appears that none of those deputies was on duty the night that Timothy died, though one of the deputies on duty that night was on duty the night Jeffrey escaped. Plaintiffs' theory seems to be that the fact that eight deputies were disciplined might have engendered hostility in other deputies. The trial court excluded the evidence as irrelevant.

The determination of relevancy is within the trial court's discretion. *Citizens National Bank of Cheboygan v Mayes,* 133 Mich App 808, 811; 350 NW2d 809 (1984), lv den 421 Mich 852 (1985); MRE 403. We find no abuse of discretion here.

IV

Finally, plaintiffs argue that the pretrial summary judgment improperly dismissed Count I, paragraph 9(4) of their complaint, which alleged that defendants had:

> The duty to maintain a proper, safe and non-defective-premises so that injury to Decedent could not occur, and so that Decedent could easily be kept under observation.

This is the only appeal plaintiffs make from the grant of summary judgment. Plaintiffs assert, apparently for the first time on appeal, that the jail cell was defective as it had horizontal cross bars which would enable persons within the cell to hang themselves or be hanged from the bars. Plaintiffs thus attempt to bring their claim within the public building exception to governmental immunity, MCL 691.1406; MSA 3.996(106).

This Court held in *Mosqueda v Macomb County Youth Home,* 132 Mich App 462, 469-470; 349 NW2d 185 (1984), that plaintiffs must sufficiently plead the statutory defect exception to governmental immunity in the complaint, including a specific allegation of the defect and a mention of the statute. Unlike the defendants in *Davis v Detroit,* 149 Mich App 236; 386 NW2d 169 (1986), a similar case involving a jail death by hanging, the instant defendants timely objected to plaintiffs' complaint by moving for summary judgment. Accordingly, we find no error in granting summary judgment.

Affirmed.